UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL GALARDO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:10-cv-00046-TWP-MJD |
| ) | |
| MATTHEW T. HEITMAN, ) | |
| TRANSPORTATION INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

This case arises from a car accident that occurred in Pennsylvania on December 5, 2007. At the time of the accident, Plaintiff Michael Galardo ("Galardo"), a citizen of Indiana, was in the passenger seat of the vehicle. Defendant Mathew Heitman ("Heitman"), a citizen of Missouri, was driving. Galardo and Heitman were co-workers at Densification, Inc., ("Densification"), and, at the time of the accident, the two men were working at the same out-of-state job site in Pennsylvania. On December 4, 2009, Galardo filed a complaint in Marion Superior Court. After Defendants removed the case to this Court under 28 U.S.C. § 1441, Galardo filed a six-paragraph-long Amended Complaint (Dkt. 34), asserting claims against two entities: (1) a claim of negligence against Heitman; and (2) a claim of breach of contract against Transportation Insurance Company ("Transportation"), Densification's uninsured or underinsured motorist ("UM/UIM") insurance carrier (collectively, Heitman and Transportation are referred to as "Defendants").

Through separate Motions for Summary Judgment, Defendants contend that because Heitman and Galardo were co-workers at the time of the accident and the accident occurred

during the course and scope of their employment, Galardo is barred from bringing this action against Heitman because worker's compensation provides him with an exclusive remedy. In turn, the Defendants each argue that Galardo has failed to satisfy the condition precedent to trigger Transportation's liability under the UM/UIM policy in force at the time of the accident. The Court agrees. For the reasons set forth below, Defendants' Motions for Summary Judgment (Dkt. 83 and Dkt. 86) are **GRANTED**.

## I. BACKGROUND

Galardo does not dispute Defendants' recitation of the facts. Instead, he contends that "it is not the facts but their implications that are in dispute." (Dkt. 98 at 1.) Because Defendants' statement of material facts is not disputed and is supported by admissible evidence, the Court accepts it as true for purposes of summary judgment. L.R. 56-1(e).[1] The relevant facts are set forth as follows.

Densification, a Virginia corporation that specializes in ensuring the suitability of soil for large construction projects, has job sites throughout the country. Galardo was a superintendent with Densification. His duties required him to work out-of-state regularly, and he was usually the highest-ranking employee at a given job site. Galardo testified that he would return home to Indianapolis "every couple of weeks" in between working at job sites. The general rule of thumb, according to Galardo, was that Densification employees did not stay out-of-state for more than three weeks at a time.

As part of his hiring package, Galardo received a company vehicle to use at his discretion. Just prior to the accident, Galardo was driving a 2001 Ford F-250 Super Duty truck. *Id*. Densification registered the vehicle in Virginia and provided all necessary insurance.

---

[1] There is one caveat to this statement. The final paragraph of Heitman's affidavit states that "[a]t the time of this accident I was in the course and scope of my employment with Densification[.]" Galardo argues that this proposition should not be accepted as a fact because it is an improper legal conclusion. The Court agrees.

Densification also gave Galardo a company credit card to pay for his gas and lodging while working out-of-state. As the superintendent on the job site, Galardo was responsible for securing lodging for the other employees. Galardo used a credit card to pay for the out-of state crews lodging, testifying that "[e]verything was put on my room, which was paid for by the company credit card." Heitman, an operator with Densification, was also required to travel to job sites spanning multiple states. Densification reimbursed Heitman for his travel expenses, and paid him mileage for using his personal vehicle. Additionally, Densification gave its employees a weekly allowance of $200.00 to $250.00 to pay for food and other related expenses.

At the time of the accident, Galardo and Heitman were working at a job site in Pennsylvania. In fact, for the six months leading up to the accident, Galardo had been alternating between the Pennsylvania job site and a job site in West Virginia. The weekend prior to the accident, Galardo drove his company truck from Indianapolis to Pennsylvania. Soon after arriving in Pennsylvania, however, the truck began experiencing transmission problems. After work on Tuesday, December 4, 2007, Galardo and Heitman took the truck to a mechanic to have it repaired. With the truck out of commission, Heitman offered to give Galardo a ride to work the following day.

The next morning (the day of the accident), Heitman and Galardo met in the hotel lobby, and then proceeded to a gas station to fuel up Heitman's vehicle and eat breakfast. When it came time to pay, Galardo realized that he had forgotten his wallet at the hotel, so Heitman drove him back to the hotel to retrieve it. While in route to the job site, it dawned on Galardo that "I didn't pay the guy", so Heitman turned around to head back to the gas station. Unfortunately, Heitman lost control of his truck, causing a one-vehicle accident. As a result of the accident, Galardo

sustained injuries, thus giving rise to the present lawsuit. Additional facts are added below as needed.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party=s favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). Nonetheless, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

### III. DISCUSSION

A.  Galardo's negligence claim against Heitman

With respect to Galardo's negligence claim against Heitman, the parties dispute whether Indiana or Pennsylvania worker's compensation law applies. Galardo concedes that summary judgment is appropriate if Indiana law applies, but instead argues that Pennsylvania law applies, since Pennsylvania was the site of the accident. According to Galardo, the application of Pennsylvania law allows him to stave off summary judgment. Defendants counter that the relevant portions of Indiana and Pennsylvania worker's compensation law are substantively identical. Logically following, the result will be the same – i.e. summary judgment must be granted – regardless of which state's law applies. In a similar vein, Defendants argue that the Court should go ahead and apply Indiana law, since Indiana law is the default application when there is no conflict between the laws of Indiana and another state.

As an initial matter, the Court must determine which state's choice of law rules apply. This is a straightforward inquiry. Galardo filed this case in Marion Superior Court, and Defendants then removed it to this Court on the basis of diversity jurisdiction. It is elementary that a federal court sitting in diversity jurisdiction applies the substantive law of the state where it sits. *Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). This includes the forum state's conflict rules. *Id.* Therefore, Indiana's choice of law rules apply.

In tort cases, Indiana's choice of law analysis involves multiple inquiries. *Simon v. United States*, 805 N.E.2d 798, 804-05 (Ind. 2004). As a threshold matter, "the court must determine whether the differences between the laws of the states are important enough to affect the outcome of the litigation." *Id.* at 805 (citation and internal quotations omitted). If there is no

meaningful conflict between the states' laws, a false conflict exists, and Indiana law applies. *See Lutz v. DeMars*, 559 N.E.2d 1194, 1196 n.1 (Ind. Ct. App. 1990) (citing E. Scoles and P. Hay, *Conflict of Laws* § 17.32 (1984 ed.)). If a meaningful conflict exists, however, the presumption is that the court will apply the substantive law of "the state where the last event necessary to make an actor liable for the alleged wrong takes place." *Simon*, 805 N.E.2d at 805 (citation and internal quotations omitted). Nonetheless, under certain circumstances (which are irrelevant here), this presumption can be overcome by a showing that "the place of the tort bears little connection to this legal action." *Id.* (citation and internal quotations omitted).

Under this framework, the Court must first analyze whether Indiana law is meaningfully different than Pennsylvania law in the realm of the exclusive remedy provision for worker's compensation. Stated differently, would the application of Pennsylvania law affect the outcome of this litigation? To reiterate, Galardo concedes that summary judgment is warranted if Indiana law applies, but insists that the application of Pennsylvania law is a game-changer for purposes of summary judgment. Given Galardo's concession with respect to Indiana law, the Court's inquiry is essentially narrowed to a single question: is summary judgment still warranted even if Pennsylvania law applies?

To answer this question, the Court first turns to Pennsylvania's Worker's Compensation Act. Under Pennsylvania law, worker's compensation benefits "are available to an employee suffering injury, 'regardless of his previous physical condition, *arising in the course of his employment* and related thereto….'" *Kohler v. McCrory Stores*, 615 A.2d 27, 30 (Pa. 1992) (quoting 77 P.S. § 411(1)) (emphasis in original). But, importantly, worker's compensation is an exclusive remedy. Specifically, in *Socha v. Metz*, 123 A.2d 837 (Pa. 1956), the Pennsylvania Supreme Court recognized as follows:

> By virtue of the Compensation Act, *an employee's common law right to damages for injuries suffered in the course of his employment as a result of his employer's negligence is completely surrendered in exchange for the exclusive statutory right of the employee to compensation for all such injuries, regardless of negligence*, and the employer's liability as a tortfeasor under the law of negligence for injuries to his employee is abrogated.

*Id*. at 839 (emphasis added; citation omitted). Further, this principle of exclusivity is effectively codified at 77 P.S. § 481(a), which provides:

> The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

77 P.S. § 481(a). Along similar lines, where an employee's injury is compensable under the compensation act, co-workers are immunized from liability for their negligence. *Employers Mut. Cas. Co. v. Boiler Erection & Repair Co.*, 964 A.2d 381, 389 (Pa. Super. Ct. 2008); *see also* 77 P.S. § 72 ("If disability or death is compensable under this act, a person shall not be liable to anyone at common law or otherwise on account of such disability or death for any act or omission occurring *while such person was in the same employ as the person disabled or killed*, except for intentional wrong.") (emphasis added). And, more to the point, "worker's compensation benefits are the sole and exclusive remedy available to employees injured in a motor vehicle accident in the course and scope of their employment." *Albright v. Fagan*, 671 A.2d 760, 762 (Pa. Super. Ct. 1996) (citations and internal quotations omitted). Thus, if Galardo was acting within the *course and scope* of his employment at the time of the accident, then it necessarily follows that his claim against Heitman is barred by Pennsylvania's exclusive remedy provision.

To counter this, Galardo argues that he was not acting within the course and scope of his employment at the time of the accident. Whether an individual was acting within the scope of

7

his employment at the time of his injury "is a question of law to be determined on the basis of the findings of fact." *Boiler Erection & Repair Co.*, 964 A.2d at 389 (citation omitted).  In making his *course and scope* argument, Galardo asks the Court to accord great weight to Pennsylvania's "coming and going" rule; indeed, as a general matter, "injuries received by an employee travelling to and from work are not compensable." *Id.* (citation omitted); *Village Auto Body v. W.C.A.B. (Eggert)*, 827 A.2d 570, 573 (Pa. Commw. Ct. 2003).[2]  Because he was merely on the way back to a gas station to pay his bill, Galardo argues, his injury was clearly outside the course and scope of his employment.

The Court is not persuaded. Despite Galardo's colorful contention that Defendants are "whistling past the graveyard of controlling precedent," (Dkt. 98 at 1), it is Galardo who omits a critical step in this analysis.  Specifically, Galardo's argument fails to consider whether he should be considered a "traveling employee" or a "stationary employee."  Whether injuries sustained away from the employer's premises occur in the course of employment depends on how that employee is categorized.  Plainly stated, traveling employees and stationary employees are treated differently under Pennsylvania law.  "For 'traveling' employees, temporary departures from the work routine for the purpose of administering to the comforts of an off-the-premises employee, including authorized breaks for lunch, will not interrupt the continuity of the employee's course of employment." *Werner v. W.C.A.B. (Greenleaf Service Corp.)*, 28 A.3d 245, 251 (Pa. Commw. Ct. 2011) (citation omitted).  By contrast, when a stationary employee "leaves the employer's premises during authorized breaks for personal reasons, *i.e.,* reasons

---

[2] There are, however, four exceptions to this general rule: (1) the employment contract included transportation to and from work; (2) the claimant has no fixed place of work; (3) the claimant is on special assignment for the employer; or (4) special circumstances are such that the claimant was furthering the business of the employer. *Boiler Erection & Repair Co.*, 964 A.2d at 389-90 (citation omitted).  If an employee falls within an exception, he is deemed to have been acting within the course and scope of employment. *Id.* at 390 (citation omitted). Galardo argues that none of these exceptions apply under the circumstances; nonetheless, this argument falters, as Galardo and Heitman clearly had no fixed place of work.

8

unrelated to her required job duties, the employee is not within the course of her employment." *Id.* (citation omitted). In sum, Pennsylvania courts have held that "the scope of employment for a traveling employee is necessarily broader than that of an ordinary employee." *Lang v. W.C.A.B. (U.S. Steel Corp.),* 529 A.2d 1161, 1163 (Pa. Commw. Ct. 1987).

Courts determine whether a given employee is a "traveling employee" on a case-by-case basis, considering factors such as: whether the employee's job duties involve travel; whether the employee works on the employer's premises; and whether the employee has a fixed place of work. *See, e.g., Lang,* 529 A.2d at 1164 (metallurgist whose job duties required travel between two plants on a regular basis and who died in a car accident near his employer's premises was a traveling employee); *Southland Cable Company v. W.C.A.B. (Emmett)*, 598 A.2d 329, 332-33 (Pa. Commw. Ct. 1991) (cable installer who did not work on the employer's premises was a traveling employee); *Roadway Express, Inc. v. W.C.A.B. (Seeley),* 532 A.2d 1257, 1259-60 (Pa. Commw. Ct. 1987) (truck driver with no fixed place of work was a traveling employee); *but see Pesta v. W.C.A.B. (Wise Foods),* 621 A.2d 1221, 1223 (Pa. Commw. Ct. 1993) (shipping and receiving department worker whose job duties did not require travel was a stationary employee).

Applying these factors, the Court concludes that Galardo was a "traveling" employee. His employer, Densification, had job sites throughout the country, and Galardo, a superintendent, often had to travel to different out-of-state job sites. On this point, Galardo testified that Densification employees worked "wherever the job took us," and he returned home to Indianapolis every few weeks in between working at different job sites. Moreover, while working at a given job site, Galardo typically drove a company truck and used company funds to pay for food, lodging, and gas. Finally, at the time of the accident, Galardo was in Pennsylvania

9

solely for work-related reasons. In sum, given the nomadic nature of Galardo's work, it is practically impossible to imagine how his job could be categorized as "stationary."[3]

Because Galardo is a "traveling" employee, a presumption exists that he was engaged in the furtherance of Densification's business when his injury occurred. *Bachman Co. v. W.C.A.B. (Spence)*, 683 A.2d 1305, 1311 n.17 (Pa. Commw. Ct. 1996). To rebut this presumption, it must be established that the employee's "actions were so foreign to and removed from his or her usual employment as to constitute an abandonment" of employment. *Id.* (citation omitted). Suffice it to say, this presumption erects a high bar. *See, e.g., Schreckengost v. W.C.A.B.*, 403 A.2d 165, 166 (Pa. Commw. Ct. 1979) (a truck driver's injury sustained during a robbery arose in the course of his employment when he was on his way back to his truck after buying snacks and intended to sleep in the truck until resuming his duties the next morning); *Aluminum Co. of America v. W.C.A.B.*, 380 A.2d 941, 942 (Pa. Commw. Ct. 1977) (employee on a business trip was in the course of employment when he was murdered on his way back to motel).

Here, the Court finds that the presumption cannot be rebutted. Although Galardo and Heitman embarked on a brief detour so that Galardo could retrieve his wallet, they were on a work-related trip and were headed to the worksite the morning of the accident. This position is reinforced by the fact that Densification was paying for Galardo and Heitman's lodging, food, and travel at the time of the accident. In short, the record is clear that, under Pennsylvania law, Galardo was acting within the course and scope of his employment at the time of the accident. In the end, it makes no difference whether Pennsylvania or Indiana law applies. Under either state's law, the result is inescapable: the exclusive remedy provision bars Galardo's claims against Heitman.

---

[3] This same basic analysis applies to Heitman, even though Heitman did not drive a company vehicle. Instead, he drove a personal vehicle, and Densification reimbursed him for mileage. Nonetheless, this is a distinction without a difference.

B.     **Galardo's breach of contract claim against Transportation**

Galardo next alleges that Transportation was contractually obligated to provide UM/UIM coverage to him at the time of the collision.  Without belaboring the point, the Court finds that the terms of Transportation's UM/UIM Endorsement are clear and unambiguous.  Specifically, the Endorsement provides as follows: "'We' will pay in accordance with the Virginia Uninsured Motorists Law, all sums the 'insured' is *legally entitled to recover* as *damages* from the owner or operator of an 'uninsured motor vehicle.'"[4]

Galardo's breach of contract claim against Transportation is inextricably tied to his failed negligence claim against Heitman.  In his response brief, Galardo seemingly concedes as much, writing that "[i]f it were true that under applicable law the case was limited by worker's compensation, clearly there would be no entitlement to compensation under the policy." (Dkt. 98 at 7.)  As discussed, because Galardo is not *legally entitled* to recover damages from Heitman, he cannot satisfy the condition precedent to tap into Transportation's UM/UIM coverage.

This position is reinforced by Virginia case law discussing the interplay between insurance coverage and the exclusivity provision of worker's compensation law.  *See, e.g., Aetna Cas. & Sur. Co. v. Dodson*, 367 S.E.2d 505, 508 (Va. 1988) ("Because workers' compensation afforded the exclusive remedy against the decedent's employer and fellow employees for his accidental death, his statutory beneficiaries are not 'legally entitled to recover' damages against

---

[4] With respect to general principles of insurance contract interpretation, both Indiana and Pennsylvania adopt the same basic approach: insurance contract interpretation is typically a question of law for courts; the terms of an insurance policy are guided by the basic precepts of contract interpretation; and, if an ambiguity exists, it is interpreted in favor of the insured. *See Argonaut Ins. Co. v. Jones*, 953 N.E.2d 608, 614-15 (Ind. Ct. App. 2011); *Wall Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 962-63 (Pa. Super. 2007). Because there is no meaningful difference between Pennsylvania and Indiana on this front, Indiana law applies. *See Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind. Ct. App. 1997) ("If the purposes and policies of two potential rules are the same, the forum should apply the forum law."). Obviously, the insurance contract incorporates Virginia law; as such, where necessary, Virginia law applies to the policy itself. *See JKL Components Corp. v. Insul-Reps, Inc.*, 596 N.E.2d 945, 950 (Ind. Ct. App. 1992) (contract provision that an agreement is to be governed by law of another state operates to import the substantive law of the state).

them. It follows that a condition precedent to Aetna's liability under its [uninsured motorist] endorsement was not met."); *Welch v. Miller & Long Co. of Maryland, Inc.*, 521 S.E.2d 767, 769-70 (Va. 1999) ("[B]ecause the Act afforded the exclusive remedy against the decedent's statutory employer (Miller & Long) and a fellow servant (Gunn), the decedent's statutory beneficiaries under the wrongful death statutes are not legally entitled to recover damages against them. Thus, a condition precedent to the insurers' liability under the uninsured motorist statute was not met."). Accordingly, summary judgment is warranted on Galardo's contract claim.

## IV. CONCLUSION

The undisputed facts show that Galardo's only potential remedy for his injuries is through worker's compensation law. Galardo's negligence action against his co-worker, Heitman, is barred under the exclusive remedy provision. As a result, Galardo is necessarily barred from tapping into Transportation's UM/UIM coverage. For these reasons, Transportation's Motion for Summary Judgment (Dkt. 83) and Heitman's Motion for Summary Judgment (Dkt. 86) are **GRANTED**. A final judgment will accompany this entry.

SO ORDERED.

Date: 01/12/2012

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Scott B. Cockrum
HINSHAW & CULBERTSON
scockrum@hinshawlaw.com

Patrick Philip Devine
HINSHAW & CULBERTSON, LLP
pdevine@hinshawlaw.com, lgoss@hinshawlaw.com

James Gregory Garrison
GARRISON LAW FIRM
greg@garrisonlegal.com, pam@garrisonlegal.com

James A Goodin, Jr
GOODIN ABERNATHY LLP
jgoodin@goodinabernathy.com, tkocher@goodinabernathy.com

Scott Ian Richardson
scott@scott4law.com

Joshua N. Taylor
GARRISON LAW FIRM LLC
josh@garrisonlegal.com